1

2

3

4

5

6

7

8           IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PAULINE DUDLEY,                    No. 2:14-CV-1158-JAM-CMK

12              Plaintiff,

13        vs.                         FINDINGS AND RECOMMENDATIONS

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16
     _____/
17

18          Plaintiff, who is proceeding pro se, brings this action under 42 U.S.C. § 405(g) for

19   judicial review of a final decision of the Commissioner of Social Security.  Pending before the

20   court are plaintiff's motion for summary judgment (Doc. 10) and defendant's cross-motion for

21   summary judgment (Doc. 13).

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on November 4, 2010.  In the application, plaintiff claims that disability began on August 5, 2008.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on July 31, 2012, before Administrative Law Judge ("ALJ") Bradlee S. Welton.   In a November 27, 2012, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

> 1.    The claimant has the following severe impairment(s): post-traumatic stress disorder (PTSD) and depression;
>
> 2.    The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3.    The claimant has the following residual functional capacity: the claimant can perform sedentary work; the claimant can lift/carry 10 pounds frequently and occasionally; the claimant must have a sit/stand option every 30 minutes; she should be able to stand for a minute or two or sit for a minute or two at the station; due to concentrated focus issues and problems getting along with others, she would be limited to simple routine tasks with only occasional interaction with the public, supervisors, and co-workers;
>
> 4.    Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on March 13, 2014, this appeal followed.

# II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

1   including both the evidence that supports and detracts from the Commissioner's conclusion, must

2   be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

3   v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

4   decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

5   Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

6   findings, or if there is conflicting evidence supporting a particular finding, the finding of the

7   Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

8   Therefore, where the evidence is susceptible to more than one rational interpretation, one of

9   which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

10  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

11  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

12  Cir. 1988).

13

14                          **III.  DISCUSSION**

15          In her motion for summary judgment, plaintiff argues: (1) the ALJ erroneously

16  stated that plaintiff has a disabled husband and three minor children; (2) the ALJ failed to

17  properly evaluate the treating source opinions; and (3) the ALJ failed to adequately account for

18  plaintiff's mental impairments.

19          A.      **ALJ's Misstatement of Fact**

20          In summarizing plaintiff's hearing testimony, the ALJ stated: "She is married and

21  lives with her disabled husband and her children ages 9, 12, and 14.  According to plaintiff, this

22  statement is incorrect – she does not live with a disabled husband or care for minor children.

23  Plaintiff fears that the ALJ's misstatement of fact could have formed the basis for a conclusion

24  that plaintiff cares for four dependents, which she does not.

25  / / /

26  / / /

1    Defendant concedes that the ALJ misstated the facts, but argues that any error had

2    no effect on the outcome of the case.  The court agrees.  As defendant correctly notes, in

3    discussing the history reported to Bradley Daigle, M.D., the ALJ accurately observed "She lives

4    with her father, stepmother, and nephew in Sacramento, CA."  Additionally, a review of the

5    ALJ's hearing decision reflects that the ALJ never relied on or made reference to the

6    misstatement of fact in reaching any conclusion relevant to the disability analysis.

7          **B.**     **<u>Evaluation of Medical Opinions</u>**

8        The weight given to medical opinions depends in part on whether they are

9    proffered by treating, examining, or non-examining professionals.  See <u>Lester v. Chater</u>, 81 F.3d

10   821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

11   professional, who has a greater opportunity to know and observe the patient as an individual,

12   than the opinion of a non-treating professional.  <u>See id.</u>; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285

13   (9th Cir. 1996); <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

14   to the opinion of a non-examining professional.  See <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 & n.4

15   (9th Cir. 1990).

16       In addition to considering its source, to evaluate whether the Commissioner

17   properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

18   in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

19   uncontradicted opinion of a treating or examining medical professional only for "clear and

20   convincing" reasons supported by substantial evidence in the record.  See <u>Lester</u>, 81 F.3d at 831.

21   While a treating professional's opinion generally is accorded superior weight, if it is contradicted

22   by an examining professional's opinion which is supported by different independent clinical

23   findings, the Commissioner may resolve the conflict.  See <u>Andrews v. Shalala</u>, 53 F.3d 1035,

24   1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

25   rejected only for "specific and legitimate" reasons supported by substantial evidence.  See <u>Lester</u>,

26   81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

1  the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

2  finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

3  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

4  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

5  without other evidence, is insufficient to reject the opinion of a treating or examining

6  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

7  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

8  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

9  see also Magallanes, 881 F.2d at 751.

10        Plaintiff claims that the ALJ failed to properly evaluate the opinions of treating

11  medical provider, Dr. Downhill.  As to Dr. Downhill, the ALJ stated:

12              Dr. Downhill completed a mental source statement on July 19, 2012.  He
              opined that claimant had difficulty with sustained concentration due to
13              consequences of her bipolar disorder with a previously psychotic
              component.  In addition, she had poor ability to relate to co-workers, deal
14              with the public, or interact with supervisors, behave in an emotionally
              stable manner or relate predictably in social situations.  However, claimant
15              displayed fair ability to use judgment, deal with work stresses, maintain
              attention and concentration, understand, remember, and carry out complex
16              job instructions and demonstrate reliability.  In addition, claimant has good
              ability to follow work rules, function independently, and understand,
17              remember, and carry out simple job instructions (Exhibit 14F).

18  The ALJ also discussed Dr. Downhill's treating records as follows:

19              Mental status examination was normal (pg. 8).  Discharge criteria by Jack
              Downhill, M.D., claimant's treating psychiatrist, noted claimant would no
20              longer need psychiatric support to manage her depression or, if she were
              not stable enough, only minimal follow-up would be needed (pg. 11).  The
21              record also reveals claimant is generally stable on her medications and she
              only destabilizes when she is not taking her medications (pg. 54)(Exhibit
22              13F).

23  In weighing the medical opinions, the ALJ stated:

24              In reaching the determination to the claimant's residual functional
              capacity, the undersigned accorded significant weight to the findings of the
25              state agency physicians and the consultative examiner in this case (Exhibit
              3F, 6F).  Their opinions are consistent with the record as a whole and
26              supported by mental status examinations and claimants routine and

1      conservative care.  The opinion of Dr. Wood is given little weight.  It is
    inconsistent with the VA disability ratings and not supported by the
2      evidence of record (Exhibit 6D).  The opinion of treating physician Dr.
    Downhill is given partial weight.  Dr. Downhill noted that her condition is
3      due to her bipolar disorder with a psychotic component, however, this is
    not consistent with the overall treatment record.  In fact, the record shows
4      claimant symptoms are controlled with medications and she had no
    psychotic component (Exhibit 9F, pgs. 22, 23).

5

6          As stated above, a contradicted treating opinion is properly evaluated when the

7  ALJ sets out a detailed and thorough summary of the facts and conflicting clinical evidence,

8  states an interpretation of the evidence, and makes a finding.  Such is the case here.  Specifically,

9  the ALJ accorded significant weight to the opinions of the state agency doctors, whose opinions

10  contradicted Dr. Downhill's assessment.

11          As to the state agency doctors, the ALJ stated:

12      Bradley Daigle, M.D., saw the claimant for a complete psychiatric
    evaluation on January 26, 2011.  Her chief complaint was "mind
13      problems."  Psychologically, she stated that she had some brief therapy in
    2007 and she took Lorazepam for her anxiety.  Over recent months or
14      years, she has been in psychotherapy at the VA hospital but she did not
    start medication there until September of 2010, when she saw a
15      psychiatrist.  She receive Depakote with the possibility that she was
    agitated and might have bipolar disorder.  She had a reaction to the
16      Depakote with hallucinations and other side effects and stopped it in
    November 2010.  She is not currently receiving psychotherapy, but
17      currently takes Risperidon, Trazadone, Lorazepam or Ambien on an
    infrequent basis.  She sleeps well.  Her appetite is good.  She denied any
18      suicide attempts and she has never been psychiatrically hospitalized.  She
    reported that she has never been a substance abuser except for light
19      marijuana as a teen.

20      She lives with her father, stepmother, and nephew in Sacramento, CA.
    She has a valid driver's license and drives her own car.  She is able to take
21      buses.  She goes out alone without any reported difficulty.  She takes care
    of her own self-care.  She does some light laundry and cleaning.  She
22      handles her own bills and money.  She occasionally dates.  She likes to
    read and take long walks.  She goes to the library and uses the computer.
23      In addition, she was actively seeking work and was going to EDD looking
    for jobs.
24

25      Mental status examination showed her coherent and organized, there was
    no tangentiality or loosening of association.  She was relevant and non-
26      delusional.  She had no bizarre or psychotic thought content.  She had no
    suicidal, homicidal, or paranoid ideation during the interview.  She denied

auditory or visual hallucinations.  She did not appear to be responding to internal stimuli.  Her mood was euthymic.  Her affect was slightly histrionic and labile.  She had no history of disruptive anxiety, depression, tearfulness, or suicidal ideation.  She was alert and oriented in three spheres.  She appeared of at least average intelligence.  Her memory, fund of knowledge, concentration, and calculation was within normal limits.  However, her insight and judgment appeared to be limited regarding current problems.  She received a diagnostic impression of Axis I, possible bipolar disorder, treated, Axis II, mixed personality disorder with narcissistic, histrionic, and immature personality features with a GAF of 65.

Moreover, Dr. Daigle noted claimant was currently looking for work and had a good education.  He opined that she is capable of resuming employment and that she is not significantly limited in her ability to understand, remember, and carry out one or two step job instructions or detailed and complex instructions.  She is slightly limited in her ability to relate and interact with supervisors, co-workers, and the public.  She is not significantly limited in her ability to maintain concentration and attention, persistence, and pace.  She is slightly to moderately limited in ability to associate with day-to-day work activity, including attendance and safety and lightly to moderately limited in ability to adapt to the stresses common to a normal work environment (Exhibit 3F).

The record also contains mental residual functional capacity assessment(s) completed by a state agency physician employed by the State Disability Determination Services (DDS) in February 2011.  The state agency physician found claimant to have a depressive disorder and a personality disorder with histrionic and dependent traits.  Nonetheless, claimant would have minimal difficulty remembering locations and work like procedures, understanding and remembering short and simple instructions, and detailed instructions.  She would have minimal difficulty carrying out short and simple, and detailed instructions and maintaining attention and concentration for extended periods, performing activities within a schedule, sustaining an ordinary routine without special supervision, and making simple work related decisions.  However, she would have more then minimal difficulty working in coordination with others without being distracted by them, and completing a normal workweek without interruptions from psychologically based symptoms.  Further, she would have minimal difficulty interacting appropriately with the public, asking questions or seeking assistance, and maintaining socially appropriate behaviors, and cleanliness.  She would have more then minimal difficulty accepting instructions or criticism from supervisors, and getting along with coworkers.  She would have minimal difficulty being aware of normal hazards, and traveling to unfamiliar places.  She would have more than minimal difficulty responding appropriately to changes in the work setting and setting realistic goals independently of others (Exhibit 5F, 6F).

In light of this analysis, it is clear that the ALJ outlined the findings and opinions of contradicting medical opinions, including the opinion of an examining source.  The ALJ also set forth his

1  analysis of the conflicting opinions, concluding that the opinions from the agency doctors were

2  consistent with plaintiff's history of conservative and routine care.  The court finds no error in

3  giving little weight to Dr. Downhill's opinions.

4        **C.**    **<u>Plaintiff's Mental Impairments</u>**

5        Plaintiff somewhat vaguely argues that the ALJ failed to properly account for her

6  PTSD symptoms.  The court does not agree.  First, the ALJ concluded that plaintiff's PTSD

7  constituted a severe impairment.  Second, as discussed in more detail above, the ALJ set out a

8  detailed discussion of the conflicting medical evidence and evaluated that evidence, giving

9  greater weight to some evidence, and providing reasons for doing so.  Finally, despite plaintiff's

10 PTSD symptoms, the credited medical opinion evidence supports the ALJ's finding that plaintiff

11 can perform sedentary work.  Plaintiff's vague and conclusory statements challenging the ALJ's

12 analysis with respect to mental impairments in general, and PTSD in particular, are unpersuasive.

13 ///

14 ///

15 ///

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, the undersigned recommends that:

1. Plaintiff's motion for summary judgment (Doc. 10) be denied;

2. Defendant's cross-motion for summary judgment (Doc. 13) be granted; and

3. The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 12, 2016

_Craig M. Kellison_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE